```
_____ FILED  _____ LODGED
         _____ RECEIVED
         Nov 14, 2013
       CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON A. GREEN<br><br>Defendant. | NO.  CR13-5633RBL<br><br>INFORMATION<br>(Felony) |

The United States Attorney charges that:

**COUNT 1**
*(Mail Fraud)*

A. Introduction

At all times relative to this Information:

1. US Foodservice was a large, privately owned, food distribution company. In addition to the Fife headquarters, the Northwest ("NW") Division of US Foodservice had facilities located in Renton, Washington, known as the "Stock Yards," and, until August 2010, in Ridgefield, Washington, known as "Ridgefield." During August 2010, US Foodservice sold the Ridgefield facility.

2. A vendor that provided services to US Foodservice typically submitted invoices seeking payment for the services to the Vendor Support Office, located in

INFORMATION / JASON A. GREEN - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Phoenix, Arizona. Where a vendor required immediate payment, however, the vendor would submit an invoice directly to the relevant division office of US Foodservice. At the division office, after an employee input information relating to the transaction into the company's computer system, including (1) a Department Code, representing the department to which the service had been or would be provided, and (2) a General Ledger Code, representing the type of service that had been or would be provided, a different employee would enter his or her approval of the transaction. Upon receipt of this information, the Vendor Support Office in Phoenix typically would send checks in payment of the invoices to the division office via an overnight commercial carrier. This expedited means of receiving payment was known as the Express Check System.

3. The NW Division of US Foodservice hired JASON A. GREEN as a Staff Accountant during 2001. In February 2005, the NW Division of US Foodservice promoted JASON A. GREEN to the position of Vice President of Finance. In that position, JASON A. GREEN had financial oversight over the facilities owned or operated by US Foodservice in the NW Division, including the Fife headquarters, Stock Yards, and Ridgefield, and had authority both to recommend that US Foodservice sign-up vendors who wished to provide goods and services to US Foodservice and to approve vendors' invoices.

4. J.D. Striping, which was operated by J.D. as a sole proprietorship, was engaged in the business of striping parking lots. After JASON A. GREEN faxed J.D. Striping documents to the US Foodservice Vendor Support Office in Phoenix, Arizona, on October 10, 2005, that office registered J.D. Striping as a US Foodservice vendor and assigned vendor number 467360 to it.

B. The Scheme to Defraud

Beginning in or about July 2009, and continuing to in or about November 2010, within the Western District of Washington, and elsewhere, JASON A. GREEN, together with others known and unknown, did devise and intend to devise a scheme and artifice to

defraud US Foodservice and to obtain US Foodservice's funds by means of material false and fraudulent pretenses, representations, and promises.

C. Manner and Means

The manner and means by which the defendant sought to accomplish said scheme and artifice to defraud include those set forth below:

5.  JASON A. GREEN and J.D. agreed that they would bill US Foodservice for services that had not actually been performed, by submitting false and fraudulent J.D. Striping invoices to US Foodservice.

6.  Pursuant to their agreement, JASON A. GREEN created and caused to be submitted to the US Foodservice Vendor Support Office in Phoenix, Arizona, false invoices claiming that J.D. Striping had performed services for US Foodservice, including pressure washing trucks and trailers at the Stock Yards facility in Renton, Washington, when in truth and fact J.D. Striping had not performed the services alleged and US Foodservice did not owe the money sought.

7.  JASON A. GREEN and J.D. agreed that they also would bill US Foodservice for security guard services that would not actually be performed, by submitting false and fraudulent invoices to US Foodservice.

8.  Pursuant to their agreement, J.D. registered the trade name Day and Night Security and opened a bank account in that name. JASON A. GREEN also faxed Day and Night Security documentation to the US Foodservice Vendor Support Office in Phoenix, Arizona, in order to register Day and Night Security as a US Foodservice Vendor.

9.  Pursuant to their agreement, JASON A. GREEN and, on occasion, J.D., caused to be submitted to the US Foodservice Vendor Support Office in Phoenix, Arizona, false invoices claiming that Day and Night Services would be performing services for US Foodservice, including providing "security guard coverage" at the Ridgefield facility in Vancouver, Washington, for periods of between 18 hours and 24 hours per day, "seven days a week," when, in truth and fact, as JASON A. GREEN and

J.D. well knew, Day and Night Security would not be performing the services alleged and US Foodservice did not owe the money sought.

10. JASON A. GREEN and J.D. often caused to be submitted to the US Foodservice Vendor Support Office multiple false and fraudulent Day and Night Security invoices for the same month.

11. JASON A. GREEN fraudulently approved the false J.D. Striping and Day and Night Security invoices or directed another to approve the false invoices, despite the fact that JASON A. GREEN knew that J.D. Striping and Day and Night Security had not performed and would not perform the services alleged and were not owed the money sought.

12. In order to conceal the fraudulent payments to J.D. Striping and Day and Night Security, JASON A. GREEN typically accessed the US Foodservice computer system and reclassified the General Ledger Codes that described the fraudulent payments. In doing so, JASON A. GREEN often grouped fraudulent expenditures with other expenditures, and then assigned multiple unrelated General Ledger Codes to the group, thereby making it appear as though a single fraudulent expenditure actually consisted of multiple smaller expenditures for completely unrelated goods and services.

13. After the Vender Support Office sent checks in payment of the fraudulent invoices to JASON A. GREEN, he provided the checks to J.D. for cashing. Upon cashing the checks or causing them to be cashed, J.D. kept two-thirds of the proceeds as his share, and delivered to JASON A. GREEN one-third of the proceeds.

14. By submitting and processing false invoices in the manner described herein, JASON A. GREEN and J.D. fraudulently caused US Foodservice to issue checks having a total value in excess of $495,000.

D. Execution of Scheme

15. On or about the dates set forth below, JASON A. GREEN, for the purpose of executing the above-described scheme and artifice to defraud, and for attempting to do so, did knowingly and willfully send and deliver and cause to be sent and delivered by

the United States Postal Service and other private and commercial interstate carriers according to the directions thereon, the items listed below, each of which constitutes a representative sample of the use of the mails and private and commercial interstate carriers in furtherance of the scheme and artifice to defraud and a separate count of this Information:

| Count | Date of Mailing | Defendant(s) | Item Mailed |
|---|---|---|---|
| 1 | November 23, 2010 | JASON A. GREEN | Check no. XXXX4786, dated November 23, 2010, written on the account of US Foodservice, and made payable for $42,627.00, to J.D. Striping, in payment of Invoice nos. P3-P9-2010; 03-589; 04-623; 05-667; 06-702; 07-751; and 08-795, mailed from US Foodservice in Phoenix, Arizona, to J.D. Striping, Seattle, Washington |

All in violation of Title 18, United States Code, Section 1341.

DATED this 15th day of October, 2013.

_____
JENNY A. DURKAN
United States Attorney

_____
CARL BLACKSTONE
Assistant United States Attorney

_____
ARLEN R. STORM
Assistant United States Attorney